# ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**FILED**

JUN 23 2011

U.S. COURT OF
FEDERAL CLAIMS

```
*****************************************
Michael Palma                           *
          Petitioner – Sui Juris         *
                                         *     Case #  1 1 - 4 1 9   L
                                v.       *
                                         *
THE UNITED STATES                        *
          Defendant                      *
                                         *
*****************************************
```

Michael Palma as Petitioner.

United States as defendant citing the United States District Court for the Southern District of Texas, Houston Division for failing to provide due process and protection of property rights during a property rights case, this is NOT a judicial misconduct case.

For the record, I want to pay this Court the honor and respect it deserves. Therefore, I, Michael Palma hereby duly accept the Oaths of Office of the judges of this Court, being your open and binding offer of contracts to form a firm and binding, private contract between the court and me. I am pleased that when the judges said "so help me God", they promised, and are bound by their word, that they would perform all of their promises which includes protecting all of my unalienable rights. I trust they will be honorable men whose word is their bond, and that they will honor their private contract with me by keeping their promises, and not allow any third-party agents, acting without delegated or regulatory authority, to interfere in your duty to me.

Petitioner is asking this Court to protect private property and due process rights under the Fourth and Fifth Amendments of the Constitution from Federal Judge(s) attempting to usurp those rights.

TIME IS URGENT IN THIS CASE AS THE GOVERNMENT AGENCY, HARRIS COUNTY APPRAISAL DISTRICT, HAS SET JULY 17 2011 AS THE DATE FOR APPRAISAL OF PRIVATE – NON-RENDERED PROPERTY, A 60 DAY DELAY MAY HAVE UNFORESEEN CONSEQUENCES FOR PETITIONER AND OTHER PARTIES INVOLVED

## JURISDICTION AND VENUE

1. Jurisdiction is based upon the fact that the United States Court of Federal Claims has jurisdiction under 28 USC 1491 to protect petitioner's rights of due process and property under the Constitution when violated by a State of the United States or, as in this instance, by a federal judge in the Southern District of Texas having failed to protect the rights of the petitioner.

2. Venue is proper as this court is a national court.

## HISTORY OF CASE IN SOUTHERN
## DISTRICT OF TEXAS

3. Petitioner filed a case IFP in the Southern District of Texas. The IFP was accepted (MISC. CASE. NO. H-11-231) and plaintiff's original proceeding was docketed on 5/24/11 with case number 4:11-cv-01966. (The documents for this case are official documents and is sufficient without providing the documents – RCFC 9(d)

4. Petitioner filed a Temporary Restraining Order on 6/6/2011 which was summarily dismissed on 6/8/2011 for reasons that violated the plaintiff's rights to due process.

5. Petitioner filed an amended TRO on 6/10/2011 stating that the reasons for denial were not valid, to the best of petitioners knowledge this was never ruled upon.

6. A motion for dismissal by defendant was docketed on 6/13/2011

7. The order for dismissal was signed on 6/14/2011 without hearing or notice of a motion of dismissal to petitioner using 28 USC1341 as grounds for dismissal.

8. Petitioner received on 6/15/2011 the signed order for dismissal.

9. Petitioner filed a Memorandum in support of Motion to Reinstate of the case, granting of petitioners TRO and recusal of Judge Hoyt on 6/16/2011.

10. Petitioner received defendant's motion to dismiss via certified mail on 6/16/2011 *after* he filed the above document.

11. Petitioner filed an Amended Motion to Reinstate of the case, granting of petitioners TRO and recusal of Judge Hoyt on 6/17/2011 stating the reason why defendants motion to dismiss should be denied. It will not be ruled on do to the fact that the case was closed the same day.

## PETITIONER'S REQUEST FOR ENFORCEMENT OF PROPERTY RIGHTS AND DUE PROCESS OF LAW

12. Petitioner moves this Court to render judgment in its favor due to the following issues:

   a. A Failure of Judge Hoyt to understand the State of Texas "administrative process" for property taxation and failure to protect private property rights under the Fourth Amendment;

   b. A dismissal of case 4:11-cv-01966 when Judge Hoyt failed to understand that 28 USC 1341 only applies to the "assessment, levy or collection of any tax" while the case before him concerned only the rendering of said property, which must occur prior to any assessment, thereby violating the Fifth Amendment. Another violation of due process was his denial of petitioners TRO for what petitioner believes was frivolous reasons;

   c. The bias of Judge Hoyt because of the fact that he owns business property in Harris County.

The Arguments are as follows:

## STATEMENT OF FACTS - TAXATION
### "ADMINISTRATIVE PROCESS"

13. The "administrative process" of taxation in Texas is broken into the following distinct and separate components which is undisputable.

   a) Rendering -- must be performed annually by the owner, fiduciary or if authorized by the chief appraiser, or by the chief appraiser himself.

   b) Appraising – performed by the appraisal district upon properly and lawfully rendered property

   c) Assessing – performed by the tax assessor/collector upon a properly certified appraisal roll

   d) Collections – performed by the tax assessor/collector upon a properly certified appraisal roll, this is a taking when a lawful rendering did not occur

   e) Levy of uncollected taxes – this act can be performed by either the county attorney or by a lawfully contracted attorney

   f) Lawsuit for the collection of unpaid taxes – this can be instituted by either the county attorney or by a lawfully contracted attorney

   g) A "taking" of property – normally performed after all other steps have been completed and is executed by the County Sherriff.

## STEP 1 - RENDERING
### VOLUNTARY

14. Texas Constitutional law restricts government from interest in the house of the petitioner, unless *voluntarily rendered*, by use of attachment of property taxes to "a home and 200 hundred acres in rural areas of Texas and a home and lot in urban areas of Texas. This restriction was clarified by the Homestead Act of 1839" that continued during the post revolutionary Texas Constitution of 1876. (See **Law of Jan. 26, 1939, Tex. Gen. Laws [1839-40] 125, 2 H. GAMMEL, LAWS OF TEXAS 125 (1898). For a history of the homestead exemption in Texas, see Joseph W. McKnight,** *Protection of the Family Home from Seizure by Creditors***: The Sources and Evolution of a Legal Principle, 87 Sw. Hist. Q. 369 (1983)).**

15. In *Hanson v. Jordan* (1947) 145 T. 320, 198 S.W.2nd 262 the court ruled:

   > The constitutional amendment providing that only qualified electors who **have duly rendered their taxable property** shall be qualified to vote in a bond election was enacted for purpose of **inducing owners of property** to place it

> upon tax rolls and become liable for its pro rata share of taxes levied and assessed by municipality and to keep from voting in bond elections those who did not have any property on tax rolls and who did not pay taxes to municipality.

16. And again in *CITY OF ROMA v. GONZALEZ*, 397 S.W.2d 943(1965)

> The situation as stated in these two findings is similar to the facts in <u>Hanson v. Jordan</u>, 145 Tex. 320, 198 S.W.2d 262. Justice Brewster, speaking for the Supreme Court, after stating that the purpose of Art. VI, Sec. 3a, Constitution of the State of Texas, limiting voters at a bond election to voters who had duly rendered their property for taxes, was <u>to **induce owners of property** to place it upon the tax rolls</u> and become liable for its pro rata share of the taxes levied and assessed by the municipality,...

17. Or as more specifically stated in *MARKOWSKY et al. v. NEWMAN et al.,* 136 S.W.2d, 808(1940)

> The time fixed for rendition of property to city for taxation by statute, providing that owner "shall" hand city assessor and collector complete sworn inventory of property **within first three months of each calendar or fiscal year**, is **not** mandatory, but **directory**...

> AND in the same case:

> A statutory provision, directing, authorizing or commanding an act or thing to be done within certain time, without any negative words restraining the doing thereof afterwards, is usually regarded as **directory, not mandatory**...

18. In *Stone v. Stovall* (D.C. 1974) 377 F.Supp. 1016, affirmed 95 S.Ct. 1637, 421 U.S. 289, 44 L. Ed.2nd 172, rehearing denied 95 S.Ct. 2617, 422 U.S. 1029, 45 L.Ed.2nd 686 The Court stated:

> Vernon's...and city laws restricting suffrage in bond elections to persons who have made available for taxation some item of real...property...were not necessary to further state's interests in limiting the electorate to those who could pay the financial obligation created by the bonds or to maintain a penalty that would encourage **voluntary rendering of property** for taxation which would enrich the state and city treasuries...

19. There are other cases relating to the "mandatory-ness" of requiring the rendering of property, however I would now like to move on to *exactly* what makes "property" taxable in the State of Texas.

STEP 1 - RENDERING
MANDATORY

20. This act MUST be performed in accordance with Vernon's Annotated Statutes as stated:

> Each person, partnership, and corporation owning property within the limits of the corporation shall, between January first and April first of each year, hand to the city assessor and collector a full and complete sworn inventory of the property possessed or controlled by him, her, or them, within said limits on the first day of January of the

current year.[now called the rendering process] If the fiscal year of a municipal corporation runs otherwise than the calendar year, such corporation may by ordinance require said inventory to be made as of the first day of the fiscal year, in which case the inventory shall be handed to the city assessor and collector within the first three months of the fiscal year. (**As amended Acts 1934, 43rd Leg., 3rd C.S., p. 50, ch.27, Sec. 1.) Pocket Part Vol. 2, Vernon's Annotated Statutes, art. 1043**

21. This Statute has been bifurcated and can now be found in the Texas Tax Code §§22.01 and 22.25:

Sec. 22.01.  RENDITION GENERALLY.  (a)Except as provided by Chapter 24, a person shall render for taxation all tangible personal property used for the production of income that the person owns or that the person manages and controls as a fiduciary on January 1.  A rendition statement shall contain:

**(b)  When required by the chief appraiser,** a person shall render for taxation any other taxable property that he owns or that he manages and controls as a fiduciary on January 1. (mandatory)

(c)  A person **may render** for taxation any property that he owns or that he manages and controls as a fiduciary on January 1, although he is not required to render it by Subsection (a) or (b) of this section. (voluntary)

(d through l)  not relevant to this matter

Sec. 22.25.  PLACE AND MANNER OF FILING.  A rendition statement or property report **required or authorized** by this chapter **must be filed** with the chief appraiser for the district in which the property listed in the statement or report is taxable.

22. §22.01 deals mostly with tangible personal property used for the production of income, the only subsections that may apply to real property are subsections (b) and (c) and 22.25 is concerned with the place and manner of filing.

   a) It is abundantly clear that §22.01(b) is for the rendering of "property" when required by the chief appraiser (for business - mandatory) and §22.01(c) is when it may be voluntarily rendered (for voting),

   b) It is abundantly clear in Vernon's article 1043 that of rendition must be made each year on property within the limits of the corporation, this has never been repealed,

   c) It is abundantly clear that §22.25 does not require a rendition that is NOT authorized by this chapter and ONLY affects §22.01(b) in this instance,

   d) It is also abundantly clear that §§22.01 and 22.25 are NOT for an "assessment, levy or collection of any tax" as is required in 28 USC 1341 for the federal government NOT to interfere.

23. Texas Tax Code Section 1.04(1) Definitions of property as stated in full:

(1)  "Property" means any matter or thing capable of private ownership.

5

24. More exactly as stated by the Texas Supreme Court, in City of Houston v. Morgan Guaranty International Bank, 666 S.W 2d 524, 533, the court held, ". . . [t]hat the phrase 'located in this state' in §11.02 means both doing business in this state and domiciled here." [emphasis added]. Morgan was granted summary judgment in the District Court of Harris County Texas enjoining Houston from collecting school district ad valorem and city taxes on shares of Guaranty Bank located within the state. Id. at 527. Section 11.02 of the Texas Tax Code stated,

> (a) Except as provided by Subsection (b) of this section, intangible personal property is not taxable.
>
> (b) Stock in a banking corporation, intangible property of an unincorporated bank, intangible property of a transportation business listed in Subchapter A, Chapter 24 of this code, and intangible property governed by Article 4.01, Insurance Code, or by Section 11.09, Texas Savings and Loan Act, are taxable as provided by law, unless exempt by law, if this state has jurisdiction to tax those intangibles.
>
> (c) This state has jurisdiction to tax intangible personal property, other than stock in a banking corporation, if the property is:
>
> > (1) owned by a resident of this state; or
> >
> > (2) located in this state for business purposes.
>
> (d) This state has jurisdiction to tax stock in a banking corporation that is incorporated in this state or, if the bank is a national bank, is located in this state. Id. at 534.

25. The appellate court, in reversing the decision of the district court, interpreted the "located in this state" language of the Texas Property Code §11.01(c)(2) according to §2.01 of the Code Construction Act which stated, "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Id. at 532.

26. Morgan Bank argued that according to §11.02(d), they should not have to pay taxes because they were not "located" in the state of Texas. Houston argued that because §11.02(c)(2) gives the state the right to "tax intangible personal property other than stock in a banking corporation, if the property is 'owned by a resident of this state' or 'located in this state for business purposes,'" by the use of the "located in" language, the legislature means "doing business in." Id. at 532. The court agreed with Houston and went on to hold, ". . .[t]hat the phrase "located in this state" in §11.02 **means both doing business in this state and domiciled here**." [emphasis added].

27. In the instant case, the court must first look to the plain language of Texas Tax Code §11.01 to determine if a private house, not in business and not making profit, is NOT considered real property and hence NOT taxable under both the United States and Texas Constitutions and Title 31.

> §11.01 states:
>
>> § 11.01. Real and Tangible Personal Property
>>
>> (a) All real and tangible personal property that this state has jurisdiction to tax is taxable **unless exempt by law**.
>>
>> (b) This state has jurisdiction to tax real property if **located in this state**.
>>
>> (c) This state has jurisdiction to tax tangible personal property if the property is:
>>
>>> (1) located in this state for longer than a temporary period;
>>> (2) temporarily located outside this state and the owner resides in this state; or
>>> (3) used continually, whether regularly or irregularly, in this state.
>>> (d) Tangible personal property that is operated or located exclusively outside this state during the year preceding the tax year and on January 1 of the tax year is not taxable in this state.

28. Because the language of the statute is not clear on its face, this Court must go further and look to the legislative intent. Real property is taxable by the state of Texas if it is **located in the state**. Id. 11.01(b). Because the court has interpreted the language of "located in the state" to mean both doing business in the state and domiciled within the state, indicates that ALL private property NOT in business is NOT mandatorily taxable.

29. There are no rendering forms for "private real property" and there is no mandatory requirement to render private property.

30. It is abundantly clear upon reading the full chapter for rendering that this chapter has absolutely nothing to do with the physical act of "assessment, levy or collection of any tax" as required for federal non-interference in 28 USC 1341.

31. The federal court in Houston decided to hang its hat on 28 USC 1341 for the dismissal of the case against the Harris County Appraisal District when the case had absolutely nothing to do with the items listed in §1341 thereby violating both due process and property rights protections by a federal judge

### STEP II
### APPRAISING

7

32. Petitioner repeats re-alleges and incorporates by reference all other paragraphs.

33. This act of the "administrative process" is governed by Texas Tax Code chapters 23, 24 and 25. Primarily Chapter 23. To wit:

   Sec. 23.01. APPRAISALS GENERALLY. (a) Except as otherwise provided by this chapter, all taxable property is appraised at its market value as of January 1.

34. Without a doubt ONLY property that has been rendered is taxable and hence appraisable.

35. It is abundantly clear upon reading the full chapter(s) for appraising that these chapters have absolutely nothing to do with physical act of "assessment, levy or collection of any tax" as is required for federal interference in 28 USC 1341.

## STEP III
## ASSESSING

36. Petitioner repeats re-alleges and incorporates by reference all other paragraphs.

37. This act of the "administrative process" is governed by Texas Tax Code chapter 26. To wit:

   Sec. 26.01. SUBMISSION OF ROLLS TO TAXING UNITS. (a) By July 25, the chief appraiser shall prepare and certify to the assessor for each taxing unit participating in the district that part of the appraisal roll for the district that lists the property taxable by the unit. The part certified to the assessor is the appraisal roll for the unit. The chief appraiser shall consult with the assessor for each taxing unit and notify each unit in writing by April 1 of the form in which the roll will be provided to each unit.

38. Here in §26.01 it is clear that the assessor cannot perform any act until such time that the appraisal roll is submitted to him.

39. Beginning with step III of the administrative process 28 USC 1341 comes into play, this is the first step in the taxation process that the Federal Government CANNOT interfere with IF a lawful rendering was completed.

## STEPS IV THROUGH VII

40. Petitioner repeats re-alleges and incorporates by reference all other paragraphs.

41. Each of these steps fall within the purview of 28 USC 1341 IF a lawful rendering was completed and are not relevant to this discussion.

42. It is absolutely and perfectly clear that each step in the "administrative process" of taxation is a separate and distinct act.

43. Petitioner has never voluntarily rendered property for any year, either as owner or as fiduciary therefore a defense or in this case a dismissal under 28 USC 1341 is invalid.

## WHAT CAN ONE CONCLUDE FROM
### STEPS I AND II VERSUS III THROUGH VII
#### WHEN COMPARED WITH THE CONSTITUTION

44. Petitioner repeats re-alleges and incorporates by reference all other paragraphs.

45. The United States Constitution under the Fourth Amendment allows for the holding of private property as does the Texas Tax Code §1.04.

46. The Texas Constitution and statutes must comply with United States Constitution or are null and void.

47. All federal judges have taken an oath to defend and uphold the United States Constitution and its Bill of Rights.

48. There can be no debate that the Federal Courts have jurisdiction when it comes to the protection of private property under the Fourth Amendment.

49. There can also be no debate that the property tax "administration process" begins with the rendering process. If no lawful rendering occurs all steps after it are null and void and unenforceable.

50. The United States Constitution and 28 USC 1341 march hand in hand in the following facts:

    a) The Fourth Amendment is there to protect private property from unreasonable seizure;

    b) 28 USC 1341 does NOT prohibit the Federal Courts from aiding in the protection of private property before or during the rendering process;

    c) 28 USC 1341 does NOT prohibit the Federal Courts from aiding in the protection of private property during the appraisal process;

    d) 28 USC 1341 does NOT prohibit the Federal Courts from aiding in the protection of private property when a state government, or lower federal courts, have so utterly usurped private property rights and due process that it presumes renderings have been done and moves forward with the administrative process when no actual rendering had been done;

    e) 28 USC 1341 does prohibit the Federal Courts from interfering in the assessment, levy or collection of properly and lawfully rendered property.

51. As stated in other parts of America:

    a. "A right common in every citizen such as the right to own property or to engage in business of a character not requiring regulation CANNOT, however, be taxed as a special franchise by first prohibiting its exercise and then permitting its enjoyment upon the payment of a certain sum of money." *Spring Valley Water Works v. Barber*, 33 P 735

    b. "The individual, unlike the corporation, cannot be taxed for the mere privilege of existing. The corporation is an artificial entity which owes its existence and charter powers to the state: but the individual's right to live, and own property are natural rights for the

9

enjoyment of which an excise {tax} cannot be imposed." *Redfield v. Fisher*, 292 P 813, pg 819 (1930)

52. This petitioner has NEVER rendered property for himself or as fiduciary.

### STATEMENT OF FACTS
### BIAS DUE TO FINANCIAL INTEREST

53. Petitioner repeats re-alleges and incorporates by reference all other paragraphs.

54. Judge Hoyt, or any other judge MUST under 28 USC 455(a) disqualify himself in any proceeding in which his impartiality might reasonable be questioned.

55. The issue here is that Mr. Hoyt knows that he, individually, has a financial interest in the subject matter in controversy.

56. No judge that currently owns commercial, rental or other income producing property in Harris County should sit on this case.

57. The following is a list of judges in the Southern District of Texas that own or have financial interest in business or income producing property as stated in their financial disclosure statements for 2009:

| Chief Judge Ricardo H. Hinojosa | Owns several rental properties |
|---|---|
| Micaela Alvarez | Rental property in Hidalgo County |
| Nancy F. Atlas | Owns real property in Travis County |
| Randy Crane | Cran Family Partnership MAY own business real property |
| Keith P. Ellison | Owns an interest in many companies that may see their profits decline due to increased property tax |
| Vanessa Gilmore | Collects dividends from several companies that may see their profits decline due to increased property tax |
| Andrew S. Hanen | Has an interest in several municipal bonds which would be adversly affected should it come to light that the appraisal district has been fraudulantly rendering properties. These bonds may not be able pay the interest as stated in its prospectus |
| Melinda Harmon | Owns real estate in Dallas |
| Hayden Head | Obtains Rents from several companies |
| David Hittner | Collects dividends from several companies that may see their profits decline due to increased property tax |
| Kenneth M. Hoyt | Owns business real property in Harris County |
| Lynn N. Hughes | Owns several tracks of business land in Colorado County and government bonds which may not be able to pay the interest due |
| Janis Graham Jack | Owns several real estate properties where he is either collecting distributions or rent |
| George P. Kazen | Owns several real estate properties where he is collecting royalties |

| Sim Lake | Owns several rental properties in Houston |
|---|---|
| Gray H. Miller | Owns stock in several corporations which may pay increased property taxes |
| John D. Rainey | Has an interest in several companies that may pay increased property taxes lowering the interest paid out |
| Diana Saldaña | Financial disclosure statement is not available |
| Lee H. Rosenthal | Owns several bonds which may default if there is a decrease in tax income (current financial disclosure is not available) |
| Hilda G. Tagle | Owns real estate in Cameron County |
| Ewing Werlein, Jr. | Owns several bonds which may default if there is a decrease in tax income (current financial disclosure is not available), also owns or has interest in real property in several counties |

58. When it comes to light that the HCAD has violated the petitioners right to have and hold "private real property" and that they illegally rendered property or continued with a fraudulent "administrative process" when no rendering has occurred then several things may happen:

   a) Those judges that hold rental properties or obtain rents from rental properties or those judges that hold other types of income producing properties may see a decrease in that income due to an increase in the amount of property taxes the property will be required to pay;

   b) Those judges that hold interest in bonds, school and city, may see a decrease in the amount of dividends provided or possibly a default due to the decrease in tax collected

59. Only those judges that have no interest in any property, bonds or other items that are affected either directly or indirectly by the collection or non-collection of property taxes in Texas should have anything to do with this case.

60. Recusal of Judge Hoyt was proper if the court determines that a reasonable person would perceive a significant risk that the judge will resolve the case on a basis other than the merits.

61. A judge may be recused if there is a reasonable factual basis for calling judge's impartiality into question:

   a) In this instance the Mr. Hoyt owns business property in Harris County, he understands that when the HCAD cannot produce a lawful rendering form for the property of interest in this case that his taxes may go up for that property and his income would drop.

   b) This led Judge Hoyt to make irrational, adverse and bias decisions against this petitioner such as denying petitioners TRO asking the HCAD to produce the lawful rendering form as required by law, and dismissing this case based upon what appears to be a lack of knowledge of the "administrative process" in the taxation of property in Texas and the inability to comprehend that a "rendering" of property is a separate and distinct act from that of an assessment, levy or collection of a tax.

   c) Any reasonable person knowing all the relevant facts would harbor doubts about Judge Hoyts impartiality.

d) There is a possibility that judges in the Fifth Circuit Appeals Court in New Orleans could also be biased against the petitioner based upon the fact that these judges *may* hold parcels of land in Texas or obtain income from Texas bonds or other business property.

62. Judge Hoyt refused to recues himself thereby biasing due process.

## STATEMENT OF FACTS
## FAILURE TO PROVIDE DUE PROCESS

63. Petitioner repeats re-alleges and incorporates by reference all other paragraphs.

64. The Fifth Amendment sets forth the right to due process.

65. By denying the production of a government document that is required by law via the denial of petitioners TRO by employing frivolous excuses Judge Hoyt has denied the petitioner due process of law.

66. By granting defendants motion for dismissal, without any hearing or reply by the petitioner, using an argument that has no basis in fact or law on its face Judge Hoyt has shown an impartiality that cannot be denied, has violated the basic principles of preserving private property rights (Fourth Amendment) and has eviscerated the Fifth Amendment by denying petitioners due process.

67. The State only has LIMITED rights over property NOT owned by the federal, state or other governmental agency and is otherwise PRIVATE and is protected under the Fifth Amendment as stated in the Texas Government code §2007.002(4) and (5)

(4) "Private real property" means an interest in real property recognized by common law, including a groundwater or surface water right of any kind, that is not owned by the federal government, this state, or a political subdivision of this state.

(5) "Taking" means:

(A) a governmental action that affects private real property, in whole or in part or temporarily or permanently, in a manner that requires the governmental entity to compensate the private real property owner as provided by the **Fifth and Fourteenth Amendments to the United States Constitution** or Section 17 or 19, Article I, Texas Constitution;

(B) a governmental action that:

(i) affects an owner's private real property that is the subject of the governmental action, in whole or in part or temporarily or permanently, in a manner that restricts or limits the owner's right to the property that would otherwise exist in the absence of the governmental action;

Sec. 2007.003. APPLICABILITY. (a) This chapter applies only to the following governmental actions:

(2) an action that imposes a physical invasion or requires a dedication or exaction of private real property;

68. The plain and simple fact is this – the property in this case IS PRIVATE and not owned by any governmental agency, nor is it in business, therefore the ONLY thing a state has the jurisdiction to do is stated in Sec. 2007.003. APPLICABILITY(b)

4) an action, including an action of a political subdivision, that is reasonably taken to fulfill an obligation mandated by federal law or an action of a political subdivision that is reasonably taken to fulfill an obligation mandated by state law;

AND

(6) an action taken to prohibit or restrict a condition or use of private real property if the governmental entity proves that the condition or use constitutes a public or private nuisance as defined by background principles of nuisance and property law of this state;

AND

(12) the appraisal of property [when rendered] for purposes of ad valorem taxation

69. There is NO obligation mandated under state law to RENDER any PRIVATE property, therefore private property is under federal protection under the Fourth Amendment - §1341 does not apply in this instance, AND there is no condition of this property that constitutes "a public or private nuisance" which would require any state agency to interfere in its lawful use that would violate the Fifth Amendment as a "taking". Additionally this State can appraise property for taxation BUT ONLY IF IT HAS BEEN RENDERED in accordance with Vernon's Statutes art. 1043.

70. The failure of a federal judge to properly determine if non-rendering of a property would lead to an exaction on the property, or determine if an obligation was mandated under federal or state law or to determine of the property constituted a public nuisance is a violation of due process to the owner, trustee, beneficiary, and fiduciary.

71. The properties in the suit have never been rendered and are therefore NOT subject to the "appraisal" process, nor are they subject to §1341, it is not a public nuisance nor is there any federal or state mandate, any non-investigation of these items in a properly brought suit is a violation of due process and protection of ownership of private property.

72. The state courts have also failed when it comes to due process in the fact that this petitioner was sued in state by HISD and in turn filed a counterclaim in case number 2006-14382 which is now in appeals court with case number 01-07-00898-CV. The counterclaim was to show that the appraisal was inaccurate due to the fact that no renderings were done for the properties in question.

13

73. Case no. 01-07-00898-CV was filed on March 9 2006, the counterclaim was submitted on May 19 2006.

74. In the month of June 2006 a threatening notice was sent to petitioner, while the case was in progress, that the Harris County Tax Assessor (HCTA) was going to sell the properties in the suit in a tax foreclosure sale as shown in the attached exhibit 1. This was a violation of due process by the HCTA

75. Due to the threat of sale, petitioner presented a check on 25 July 2006 to Paul Bettencourt, HCTA.

76. This case continued on as if my counterclaim was still active, however before the jury was to get the jury instructions for the counterclaim, the judge asked the jury to leave the courtroom. At which time he flatly stated that the counterclaim would not be put in front of the jury....his words were "we will not have that in my courtroom" or words to that effect. Palma objected and noticed the court of a pending appeal.

77. Because Palma paid the tax AND since the judge dismissed the counterclaim, even though a full trial was conducted, there was nothing truly left for the jury to decide. I say this because most people do not understand the administrative process of property taxation, so there was only one way for them to decide, the common adage – if I have to pay it then so do you – for me to pay the tax.

78. Palma appealed IFP 3 times showing each time that he did not have the funds to proceed.

79. Each time it was denied but the case is still active in the 1st court of appeals

80. The federal courts did allow the IFP as shown in the exhibit 2.

81. The State courts did:
    a. NOT provide due process, in fact they trampled it utterly and completely
    b. Allow to have HCTA threaten to sell property at a tax foreclosure even though the case was progressing
    c. Not permit the counterclaim to go before the jury
    d. Not permit the case to move to appeals court even though Palma showed he could not pay
    e. Allow the bias of the state judge(s) to affect the entire case, as explained below.

82. Petitioner did obtain a PIA request from Rose Swain, the Harris County Commissioners court coordinator showing that all state judges in Harris County are paid to some extent by the county. As HISD, the County and the judges are part and parcel of the STATE there is a strong bias against anyone who goes against a state agency, just as any judge holding or obtaining income from business property in county or state where his is a sitting judge on a property rights case would be (Exhibit 4).

83. Because of the overabundance of bias in the state courts, the lack of due process and the outright violations perpetrated by STATE agencies Palma did file a federal case in an attempt to preserve property rights.....however this also failed in federal court, hence the filing here.

84. As the case in the Southern District of Texas was based on the federal and common law rights of the petitioner prior to any "assessment, levy or collection of any tax" as required in 28 USC 1341 *Fair Assessment in Real Estate Ass'n, Inc v. McNary* 54 U.S. 100,103 (1980) does not have any relevance to this case.

85. Because of the bias and coercion in state courts a plain speedy and efficient remedy was not had in the state courts which runs counter to *Samatani v. Webb County Appraisal Dist.*, No 07-41084, 285 Fed Appx. 183 2008 U.S. App. Lexis 16132, *2-3 (5th Cir. 2008 unpublished opinion as shown in attached exhibit 3).

86. The case before the Southern District of Texas was not, and never was, a case to find the process of taxation illegal or unconstitutional; rather it is merely a demand to apply the statutes in a manner that protects the petitioner from undue and illegal process and illegal takings.

87. There is no question that the state can tax entities that they have jurisdiction to tax as stated in *Morgan*, ibid; there is a question as to if they can tax private property that has never been rendered and then take it when it is not paid in violation of the Fourth Amendment, or as shown in Palma's current state case when the State uses coercion and threats to collect its takings and then dismisses a valid counterclaim in violation of the Fifth Amendment.

88. The question put forth here, to this court, is not if the State violated these rights but if a Federal Judge can violate these same rights.

## CONCLUSION

89. Judge Hoyts actions in this case have demonstrated his bias against the petitioner due to his lack of knowledge of what the "administrative process" is for property taxation. He has also shown that he does not comprehend, either through indifference or bias, what the difference is between a "rendering" and an "assessment, levy or collection". Leading to petitioner's violation of Fourth and Fifth Amendment rights.

90. Petitioners TRO was denied without valid reason violating due process of law.

91. Not granting a TRO for 2 weeks, for frivolous reasons, and the dismissal of the case in the Southern District using 28 USC 1341 is as onerous as the state discharging Palma's counterclaim just before giving it to the jury and denying his IFP to move the case forward.

PRAYER

92. WHEREFORE: Petitioner prays for judgment against the United States and that this court finds the following:

    a.   That this court finds that due process failed to be implemented by the judge of Southern District of Texas and that Federal Courts MUST ensure the protection of said rights from all transgressors, private or government. [this is not a case based upon judicial misconduct]

    b.   That this court finds that the protection of private property rights failed to be implemented by the judge of Southern District of Texas and that Federal Courts MUST ensure the protection of said rights from all transgressors, private or government. [this is not a case based upon judicial misconduct]

    c.   That this court, if able, order the Southern District of Texas to reopen case #4:11-cv-01966 and proceed without further violation of due process IF an unbiased judge can be found, or in the alternative have a judge from a far off circuit adjudicate the case.

93. Punitive Damages - That this court issues an order that the United States be held liable in the amount of one million dollars for the violation of his rights to have private property rights adjudicated in federal court.

94. Punitive Damages - That this court issues an order that the United States be held liable in the amount of one million dollars for the violation of his due process rights in federal court.

95. Petitioner would ask for court for all other damages as the law allows.

               Respectfully submitted,

By: _____

Michael Francis Palma, Sui Juris
c/o 5026 Autumn Forest Dr.
Houston, Texas 77091
E-mail: mpalma1@sbcglobal.net
Tel.     713-263-9937

## CERTIFICATION

I certify that petitioner has reviewed this Petition and state that all items are factual to the best of his

knowledge and is supported, if needed, by competent evidence.

Respectfully submitted,

Michael F. Palma
c/o 5026 Autumn Forest Dr.
Houston Texas 77091
713-263-9937

rec Jun 2006

# IMPORTANT NOTICE

## *Additional Collection Penalty Applies to*
## *2005 Property Taxes Unpaid as of July 1, 2006*

Dear Taxpayer:

Enclosed is a statement of your property taxes that remain unpaid as of May 19, 2006. The statement shows the total amount due, including penalty and interest, if you pay no later than June 30, 2006.

We are required by law to notify you that *you will be charged an additional 15%-20% collection penalty on your 2005 balance, including taxes, penalties, and interest that remain unpaid as of July 1, 2006.* The additional collection penalty will be applied to your account balance for Harris County, the City of Houston (if applicable), and all other taxing jurisdictions shown on your tax statement.

To avoid the additional collection penalty, you may:
   Either pay your account in full, or make a *partial payment\**, by:
   - mailing your check to the address on the enclosed statement; or
   - paying in person at a Harris County Tax Office location

   *\*Any unpaid balance on your account will incur the additional collection penalty of 15%-20%.*

After June 5th, you may pay your account in full by credit card or e-Check\*:
   - To pay by credit card using a touch-tone telephone, call 713-368-CARD (2273)
   - To pay online, visit the Tax Office website at www.hctax.net, where e-Check and three major credit cards (MasterCard, American Express, and Discover) are accepted.

   *\*A 2.15% vendor transaction fee is added to credit card payments. E-Checks are free.*

You may also avoid the additional collection penalty by entering into a six-month installment payment agreement with the Tax Office to pay your 2005 property taxes. Installment agreements cannot be approved if your account has any prior-year delinquent taxes. You must sign the agreement and make your first payment no later than June 30, 2006. If you miss any payments, the agreement will terminate, and the additional collection penalty will be charged.

Unless you pay your property taxes or enter into an installment agreement by June 30, 2006, the additional collection penalty must be assessed on July 1, 2006, when your account will be turned over to a law firm for collection.

Please pay these taxes to avoid collection action. The Harris County Tax Office is committed to collecting delinquent property taxes and will pursue collection through foreclosure or seizure, if necessary.

If you wish to arrange for an installment agreement, or have any questions about your account, please call our office at 713-368-2000.

Sincerely,


Paul Bettencourt
Harris County Tax Assessor-Collector

*This letter and accompanying statement serve as written notification as required under Sections 33.04/33.07 of the Texas Tax Code. If you are in bankruptcy, this notice is only for the purpose of notifying you of the current status of your account and is not an attempt to collect your account.*

Exhibit 1

# We're Here To Help

## Don't Let Your Taxes Remain Delinquent

Pay by June 30 to avoid additional penalty and interest.

- Mail your payment today or visit any of our 15 locations; or
- Call 713-368-CARD (2273) to make your credit card payment over the phone; or
- Visit www.hctax.net to pay online by credit card or e-Check; or
- Arrange a 6-month installment payment agreement.

### Call us at 713-368-2000 for assistance.

## Let us help you avoid this…



***Public Auction of foreclosed property at Harris County Courthouse***

The Harris County Tax Office is committed to collecting delinquent property taxes and will pursue collection through **foreclosure or seizure**, if necessary. If you have any questions about your account, please call our office at 713-368-2000.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL FRANCIS PALMA, | § | |
|     Plaintiff, | § | |
| v. | § | MISC. CASE NO. H-11-231 |
| | § | |
| HARRIS COUNTY APPRAISAL | § | |
| DISTRICT, | § | |
|     Defendant. | § | |

## ORDER

It is hereby **ORDERED** that Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs [Doc. # 1] is **GRANTED**.

SIGNED at Houston, Texas, this 20th day of **May, 2011**.

Nancy F. Atlas
United States District Judge

Exhibit 2



® LexisNexis®

MANOJ LUVI SAMTANI, Plaintiff-Appellant v. WEBB COUNTY APPRAISAL
DISTRICT; APPRAISAL REVIEW BOARD OF WEBB COUNTY; WEBB
COUNTY; ROBERTO VALDEZ, Individually and In His Official Capacity;
UNITED INDEPENDENT SCHOOL DISTRICT, Defendants-Appellees

No. 07-41084 Summary Calendar

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

*285 Fed. Appx. 183; 2008 U.S. App. LEXIS 16132*

July 28, 2008, Filed

**NOTICE:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [**1]
Appeal from the United States District Court for the Southern District of Texas. USDC No. 5:07-CV-53.

**COUNSEL:** MANOJ LUVI SAMTANI, Plaintiff - Appellant, Pro se, Laredo, TX.

For WEBB COUNTY APPRAISAL DISTRICT, APPRAISAL REVIEW BOARD OF WEBB COUNTY, ROBERTO VALDEZ, Individually and In His Official Capacity, Defendants - Appellees: Albert Lopez, Deborah L Leach, Law Offices of Albert Lopez, San Antonio, TX.

For WEBB COUNTY, Defendant - Appellee: Michael S Bukiewicz, County Attorney's Office for the County of Webb, Laredo, TX.

For UNITED INDEPENDENT SCHOOL DISTRICT, Defendant - Appellee: Sylvia Margarita Ornelas, Ornelas Castillo & Ornelas PLLC, Laredo, TX.

**JUDGES:** Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

**OPINION**

[*183] PER CURIAM: *

\* Pursuant to *5TH CIR. R. 47.5*, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in *5TH CIR. R. 47.5.4*.

Manoj "Luvi" Samtani appeals from the district court order dismissing his civil rights action for lack of subject-matter jurisdiction pursuant to the Tax Injunction Act, *28 U.S.C. § 1341*. Samtani contends that the district court incorrectly concluded that Texas provides a plain, speedy, and efficient [**2] remedy to his claims.

Samtani is a property owner who filed the underlying *42 U.S.C. § 1983* action alleging that the Defendants fraudulently increased his property taxes for personal gain and threatened him with foreclosure. He sought various forms of injunctive relief, including lowering and capping the appraised value of his property, preventing future increases in the property's value, and barring Defendants from making any future assessments on his property without prior authorization by the district court. He also sought money damages.

The Defendants filed motions to dismiss, citing, inter alia, the Tax Injunction Act. The Act provides,

Exhibit 3

285 Fed. Appx. 183, *183; 2008 U.S. App. LEXIS 16132, **2

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. The Defendants argued that Samtani's claims challenging the County's assessment or collection of his property tax and his federal constitutional claims could both be heard in Texas courts. The district court agreed and granted the Defendants' motions to dismiss.

The Tax Injunction Act bars a federal district court from asserting jurisdiction [**3] over a taxpayer's suit unless the State fails to supply a plain, speedy, and efficient remedy for the taxpayer's claim. See *Smith v. Travis County Educ. Dist., 968 F.2d 453, 456 (5th Cir. 1992)*. We have previously acknowledged that Texas state courts provide such a remedy for tax complaints like Samtani's. See *McQueen v. Bullock, 907 F.2d 1544, 1548 n.9 (5th Cir. 1990)*. Because the state courts also provide a procedural vehicle for taxpayers' federal constitutional claims, including a "full hearing and judicial determination, with ultimate review available in the United [*184] States Supreme Court," Texas provides an adequate remedy for Samtani's constitutional claims as well. *Smith, 968 F.2d at 456* (quotation marks omitted) (Act bars taxpayers' federal due process claim); see also *Clark v. Andrews County Appraisal Dist., 76 F. App'x 525, 526 (5th Cir. 2003)* (unpublished) (*Fifth* and *Fourteenth Amendment* challenges against county taxing authorities could be fully adjudicated in Texas state court).

Although a plaintiff could potentially show that such remedies were not available to him because the state courts have refused to entertain his federal claims, or the state remedy is uncertain or [**4] speculative, see *Smith, 968 F.2d at 456*, that is not the case here. Samtani's claim that his state court suit was not entertained is belied by the fact that he terminated the action himself by filing a "motion to non-suit." Nor do Samtani's provocative allegations against unnamed "local judges" provide a legitimate basis to question the adequacy of the state remedy.

In light of the foregoing, we AFFIRM the judgment of the district court.

FW: judges - How judges get paid - Att net Mail   Document 15   File http://us.mg838.mail.yahoo.com/mc/welcome?.partner=sbc&.gx=1&.tm=...

Previous | Next | Back to Messages                    Mark as Unread |   Print

Delete    Reply ▾   Forward   Spam   Move... ▾

   **FW: judges**                                Monday, May 16, 2011 4:54 PM
From: "Swain, Rose (Budget Office)" <Rose.Swain@ms.hctx.net>
  To: "mpalma1@sbcglobal.net" <mpalma1@sbcglobal.net>
      1 File (17KB)

      [XLS]
      .ıll

      Appellate, Di

As requested.  Please let me know if additional information is needed.
Thanks!

**rose sprott swain**
**commissioners court coordinator**
**1001 preston, suite 938**
**houston, texas  77002**
**713-755-5034 phone**
**713-437-5858 fax**
**rswain@hctx.net**

*DISCLAIMER: This message is intended for the sole use of the individual*
*and entity to whom it is addressed, and may contain information that is*
*privileged, confidential, and exempt from disclosure under applicable law.  If*
*you are not the intended addressee, nor authorized to receive for the*
*intended addressee, you are hereby notified that you may not use, copy, or*
*distribute to anyone the message or any information contained in the*
*message.  If you have received this message in error, please immediately*
*advise the sender by reply email and delete the message.  Thank you very*
*much.*

Delete    Reply ▾   Forward   Spam   Move... ▾

Previous | Next | Back to Messages          **Select Message Encoding**          | Full Headers

Exhibit 4

| Appellate, District, Probate, County, & Justices of the Peace Salaries | | | | 5/1/2011 |
|---|---|---|---|---|
| **OFFICIAL/ EMPLOYEE** | **TITLE AND DEPARTMENT** | **HOURLY SALARY** | **MONTHLY SALARY** | **ANNUAL SALARY** |
| (2) | APPEALS CT. CHIEF JUSTICES *($140,000 STATE, $7,728 COUNTY)* | $71.02 | $12,311 | $147,728 |
| (16) | APPEALS CT. ASSOC. JUSTICES *($137,500 STATE, $7,728 COUNTY)* | $69.82 | $12,102 | $145,228 |
| (59) | DISTRICT JUDGES *($125,000 STATE, $15,456 COUNTY)* | $67.53 | $11,705 | $140,456 |
| (4) | PROBATE JUDGES (PAID FULLLY BY COUNTY) | $71.41 | $12,378 | $148,536 |
| (19) | COUNTY COURT JUDGES (PAID FULLLY BY COUNTY) | $71.41 | $12,378 | $148,536 |
| (16) | JUSTICES OF THE PEACE 1.1 ~ 8.2 (PAID FULLLY BY COUNTY) | $57.53 | $9,971 | $119,652 |